P. ENCHO GEROV NEGOVANOV, A/K/A PENIO GEROFF NEGAVANOFF, AND ELENA GEROVA NACHEVA, A/K/A ELENA NIKOLOVA MACHEVA v. BETTY WENSKO

5-5300                                   455 S. W. 2d 929

Opinion delivered June 22, 1970

*W. D. McKay,* for appellants.

*Crumpler, O'Connor, Wynne & Mays,* for appellee.

CARLETON HARRIS, Chief Justice. This case relates to the rights of pretermitted children. Gero Ivanoff, a native of Bulgaria, who had lived in the United States since 1937, died a resident of Columbia County, the owner of the NW¼ of the SW¼ of Section 29, and the N½ of the SE¼ of Section 18, Township 19 South, Range 20 West, Columbia County, Arkansas. By Will, he bequeathed and devised all of his property to his daughter Eva Ivanoff Christoff, and in the event that the daughter predeceased him, then to Betty Christoff Donofrio, now Betty Wensko, appellee herein. The Will, dated December 28, 1949, was admitted to probate in the Columbia Probate Court on May 26, 1961, and Lyle Dews, a resident of the county, was appointed Administrator with the Will Annexed. Eva Christoff died testate in Ohio on December 3, 1964, leaving appellee as her sole heir and devisee. The will of Eva Christoff was admitted to probate as an ancillary proceeding in Union County, Arkansas on May 15, 1967. The estate of Gero Ivanoff remained in probate until June 22, 1967, when it was closed and the court ordered the assets distributed.

In addition to Eva Christoff, Gero Ivanoff was the father of two other children, P. Encho Gerov Negovanoy, a/k/a Penio Geroff Negavanoff, and Elena Gerova Nacheva, a/k/a Elena Nikolova Macheva, but they were not mentioned in his will. These children instituted a suit in the Columbia County Chancery Court on October 23, 1967, for partition of the real estate heretofore mentioned. It developed that P. Encho Gerov Negrovanoy had died and the cause was revised in the name of his widow and two children. After the filing of an answer, an amendment to the complaint, and the propounding of interrogatories to petitioners, the case proceeded to

trial, being submitted on the pleadings and exhibits offered. The court found the interest of each litigant in the property as follows:

| | | |
|---|---|---|
| Mariika Zhekova Negovanova | 1/3 | (life estate) of 1/3 |
| Bozhana Peneva Peneva | 1/6 | (subject to above life estate) |
| Gercho Penev Negovanov | | |
| | 1/6 | (subject to above |
| Elena Nacheva, a/k/a | | life estate) |
|     Elena Nikolova Macheva | 1/3 | |
|     Betty Wensko | 1/3 | |

However, the court denied the prayer for partition, and decreed Mrs. Wensco to be the owner of the property, free from any interest or claim of appellants.[1]

From the decree so entered, appellants bring this appeal, asserting only that they are the owners of an undivided 2/3 interest in the land by virtue of being heirs of Gero Ivanoff, and not being mentioned in his will.

It might first be said that it is agreed that the Bulgarian children of Gero Ivanoff qualify as pretermitted children under the provisions of Sec. 60-507 (b) Ark. Stat. (1969 Supp.)[2] Though recognizing this fact, appellee insists that she is entitled to prevail, first because appellants are barred by Sec. 62-2114 (b) Ark. Stat. (1969 Supp.), from claiming an interest in the

[1] Gero Ivanoff had also owned some land in Bulgaria which, according to answers to the interrogatories, had been given by him to the son, P. Enoch Gerov Negovanov prior to leaving Bulgaria. Also, according to the answers given to interrogatories, other property owned by Gero Ivanoff was divided after his death between his heirs in Bulgaria. The court found that appellants should be declared owners of the property just mentioned in Bulgaria, free of any interest or claim of Betty Wensco. Mrs. Wensco does not question this finding.

[2] It is also agreed that Mrs. Wensco is entitled to all rights of her mother.

property, and second because appellants are likewise barred by the doctrine of laches. It is pointed out that appellants admitted that they learned of the death of Gero Ivanoff in 1960, and further learned in 1964 that a will had been made by Ivanoff and that no property had been willed to them. We do not agree with the contention. Section 62-2114 deals with the time within which a will contest must be filed, and the action before us is not a will contest. As stated in *Parker* v. *Bowlan, Executrix* 242 Ark. 192, 412 S. W. 2d 597, a case which dealt with the rights of a pretermitted child, we pointed out that though a pleading was entitled "Petition for Contest of Will", it actually was not such a contest, stating:

"It will be at once noted that there is no allegation that the will was not entitled to probate, either on the basis that it was not legally executed, or because of mental incompetency or undue influence. Generally speaking, a will contest is based on the allegations and contentions that *no will exists, i. e.,* statutory requirements for execution of the instrument were not complied with—or, because of mental infirmities, the party was not mentally capable of making a will—or, in case of undue influence, the purported instrument was not the testator's will but that of someone else. Appellant does not ask that the instrument be denied probate; he only asks that it be declared ineffectual as to Thomas J. Jarvis (Jeff Jarvis, Jr.), because Jarvis was not mentioned in his mother's will."

Of course, in the case before us, the pleading is simply a petition for partition, and there is no complaint that a will has been improperly admitted to probate. In fact, the suit was brought in the chancery court. The argument relative to the statute of limitations, as well as the contention that appellants are barred by laches is answered by our case of *James* v. *Helmich* 186 Ark. 1053, 57 S. W. 2d 829. Here again, the litigation involved the rights of children whose names were

omitted from a will.[3] In reversing the trial court which had held against the children, we said:

"Since there is no special statute of limitations providing when or the period within which pretermitted children must bring suit to recover their share in the estate, they had 5 years in which to do so under the provisions of the statute, § 6960, Crawford & Moses' Digest. [4] See also *Hill* v. *Wade*, 155 Ark. 490, 244 S. W. 743. The money was not paid by the executor to the church until March 2, 1928, and the rights of appellants could not have arisen until the wrongful distribution of such money, and the statute began to run against them on the said date of its payment, and they were not barred by the 5-year statute of limitations, this suit having been instituted in 1931. *Neither were they barred by laches, having brought the suit within the time allowed*". [our emphasis]

Appellee attempts to distinguish the above holding from the case presently- before us by stating that there, the children had no knowledge of the death of their father until nearly two years after that event, while here, appellants received word of the death of Gero Ivanoff in 1960, some seven years before their petition was filed. We do not consider that to be material in the case before us, for the fact remains that we held in *James* that pretermitted children have five years *after the wrongful distribution* to commence proceedings. In the case before us, the order of distribution was not entered until June 22, 1967, and it is thus evident that appellants filed their suit in proper time. The italicized finding answers the argument as to laches. It follows that the decree of the chancery court must be reversed.

However, we agree with appellee that she is entitled to be reimbursed for 2/3 of the monies expended by her in protecting the estate from creditors, and in expenses occasioned by the administration. At the time

[3]The litigation involved adopted children.

[4]This corresponds to Sec. 37-213, Ark. Stat. Ann. (Repl. 1962).

the administrator sought approval- of his final accounting, the only assets of the estate were the real property herein involved, and cash in the sum of $193.24. In his final accounting, the administrator stated:

"The undersigned reports to this court that arrangements have been made by Betty Wensko, a beneficiary of the Estate in succession to pay the debts and court costs of the Estate in order that the Estate may be closed and distributed. The Administrator states that this court should set his fee, the attorneys fees, and accept this final account and close the Estate upon proof of satisfaction of all claims and costs."

A fee of $1,000.00 was paid to the administrator by Mrs. Wensko out of personal funds and a fee was also paid by appellee to the attorney of the estate in the amount of $750.00. Of course, if she had been unwilling to advance personal funds to pay administrative costs and other debts of the estate, it would have been necessary to sell the realty here involved in order to pay claims. Thus, as it develops, Mrs. Wensko was taking care of the interests of appellants as well as her own interest. As far back as 1861, we recognized the right of one who, in good faith, pays just claims, to be reimbursed. In *Brearly, ad.* v. *Norris,* 23 Ark. 166, Chief Justice English made this point very clear. See also *Security Bank & Trust Co.* v. *Costen.* 169 Ark. 173, 273 S. W. 705, where we said:

"If the person who incurs the expense or advances the money to pay it is not a mere volunteer who acts officiously and without interest in the estate of the decedent, the charge against the estate inures to his or her benefit. This principle was announced by this court in the case of *Brearly* v. *Norris.* 23 Ark. 166, and the principle has been recognized by many decisions in other. states."

There is no contention here that the claims and expenses paid were not valid, nor is there any question raised as to the good faith of appellee in making the

payments. The record before us does not make clear the exact amount expended by Mrs. Wensko from personal funds for purposes of paying debts and administration costs of the Ivanoff estate; in fact, the amended answer filed by appellee asserts that these costs amounted to $4,781.06, but the brief sets out that the costs amounted to $2,350.00. Inasmuch as it is necessary that the decree be reversed, we think it well that the chancellor make the determination of the actual amount paid.

In accordance with what has been said, the decree is reversed with directions to enter a decree awarding appellants their respective interests in the lands at issue; provided however, that appellants shall pay 2/3 of the expenditures made by Mrs. Wensko on behalf of the estate; the court shall further fix a lien in appellee's favor on appellants' 2/3 interest in the lands to secure the payment of same.

It is so ordered.